IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARNA BAKER, | ) No.: 2:25-cv-718 |
| Plaintiff, | ) COMPLAINT |
| v. | ) **JURY TRIAL DEMANDED** |
| WEST MIFFLIN AREA SCHOOL DISTRICT, | ) |
| Defendant. | ) |

## COMPLAINT IN CIVIL ACTION

Plaintiff, Sharna Baker ("Ms. Baker"), by and through undersigned counsel, files this Complaint in Civil Action against Defendant, West Mifflin Area School District ("WMSD" or the "District"), and upon information and belief, avers as follows:

## PARTIES

1. Ms. Baker is an African-American female who resides at 1804 Timothy Drive, West Mifflin, Pennsylvania 15122.

2. WMSD is a public school district located in the Commonwealth of Pennsylvania with its primary administrative operations located at 81 Commonwealth Avenue, West Mifflin, Pennsylvania 15122.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Ms. Baker is advancing claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), based on her gender/sex and color, and the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA") (Ms. Baker's claims arising under Title VII and the ADEA are identified as the "Federal Law Claims").

4.      Ms. Baker is also advancing claims under the Pennsylvania Human Relations Act, 43, Pa. C.S. § 951, *et seq.* ("PHRA") (Ms. Baker's claims arising under the PHRA are identified as the "State Law Claims").

5.      Ms. Baker is also asserting claims for retaliation pursuant to the Federal Law Claims and State Law Claims.

6.      This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claims.

7.      The operative facts between the Federal Law Claims and the State Law Claims mirror one another to such a degree that they form the same case or controversy under Article III, § 2 of the United States Constitution, which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

8.      Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division ("Western District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district.

9.      Specifically, these events and omissions occurred within Allegheny County, Pennsylvania, which is one of the counties encompassed by the Western District.

10.     Ms. Baker has satisfied all procedural and administrative prerequisites under 29 U.S.C. § 626, 42 U.S.C. § 2000e-5, and 43 P.S. § 959, and now may proceed to bring this action before the Court.

11. Specifically, on August 20, 2024, Ms. Baker filed a dual charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") seeking redress for the Federal Law Claims and the State Law Claims at charge number 533-2024-02847 (the "EEOC Charge") and with the Pennsylvania Human Relations Commission ("PHRC").

12. On February 26, 2025, the EEOC issued the Determination and Notice of Rights ("DNR"), wherein Ms. Baker was afforded ninety days within which to timely file the Federal Law and State Law Claims.

13. This Complaint is filed within the ninety-day time period.

14. WMSD has been and is subject to Title VII and the PHRA, and has been and is an employer within the meaning of Title VII and the PHRA.

## FACTUAL ALLEGATIONS

### Background

15. Since 1993, Ms. Baker has been a faithful employee of WMSD.

16. She was recruited to WMSD by then-Superintendent Joseph Dimperio, and she successfully taught in the District from 1993 to 2010.

17. For the 2010-2011 school year, Ms. Baker was hired as a "Roving Principal" (WMSD's description).

18. However, prior to being hired, she received numerous phone calls and participated in meetings with the Superintendent, the Assistant Superintendent, and a principal, and she was discouraged from applying for the position because it was created for the school board president's wife.

19. Nevertheless, the school board president's wife was not employed by the District, whereas Ms. Baker had been a decorated employee for the prior 17 years.

20. As a principal, Ms. Baker was responsible for, among other things, the evaluation of teachers at WMSD's elementary schools.

21. However, after only one (1) year, Ms. Baker was threatened with suspension on the pretextual reason that "due to the curtailment or alteration of the District's educational program, decrease in enrollment, to conform with the District's standard of organization or any other enumerated reason as authorized by § 1124 of the School Code, effective the 13th day of June, 2011."

22. This threat began a pattern and practice of unlawful discrimination against Ms. Baker.

**WMSD's Pattern and Practice**

23. After Ms. Baker retained legal counsel, WMSD partly reversed its course and reassigned her as a teacher at New England Elementary School ("NEES") for the 2011-2012 school year.

24. NEES, however, closed the following year, and Ms. Baker was assigned to Clara Barton Elementary School ("Clara Barton"), again as a teacher, beginning with the 2012-2013 school year.

25. In short, Ms. Baker went from teacher to principal to teacher in a little over one (1) year.

26. This carousel of changing levels of authority and responsibility within her profession and amongst her peers caused Ms. Baker to suffer, including the indignity of being in charge of and evaluating teachers one year, to going back to being a colleague the next year.

27. Her suffering was further exacerbated by WMSD's filling two (2) principal positions and one (1) assistant principal position at the time she was reassigned as a teacher.

28. Each time Ms. Baker applied for open administrative positions, she should have been reappointed because her prior removal from the principal position was allegedly due to a "decrease in enrollment," not because of her performance.

29. Each time Ms. Baker was passed over, the District filled each position with a person believed to be in a protected class.

30. Ms. Baker later learned that she was reassigned as a teacher because she had the audacity to seek a principal position when a school board member's spouse was also interested in the position.

31. Ms. Baker was also told she had no grounds to file a lawsuit because she was being replaced with an individual from a protected class, and WMSD instructed an employee to target Ms. Baker in retaliation for her attempt to protect her rights.

32. This attempted pattern of treating Ms. Baker unjustly, while also seeking to prevent her from seeking legal remedies, has been employed by the District on multiple occasions.

33. Further, prior to being reinstated, Ms. Baker was afforded insurance only for herself, not her spouse and children, as previously maintained.

34. When she was reinstated, Ms. Baker was not offered the spousal buyout in the amount of $6,000 per year pursuant to the collective bargaining agreement.

### Ms. Baker Becomes Principal At WMSD Middle School

35. Despite the District's mistreatment, Ms. Baker successfully taught at Clara Barton through the 2015-2016 school year.

36. For the school year 2016-2017, Ms. Baker was named the principal at West Mifflin Middle School for grades 4 and 5.

37. Ms. Baker later learned that several school board members wanted to correct the injustice that was well known in the District and approved her being hired as an administrator.

38. However, she received no raise for the elevated position until the end of the 2016-2017 school year.

39. After exceling for years as the principal for grades 4 and 5, in the spring of 2022, WMSD's Superintendent and Assistant Superintendent presented Ms. Baker with an opportunity that was purportedly a "promotion."

40. The opportunity was to become the District's Director of Communications/Special Project Administrator.

41. However, the opportunity did not include a pay raise, and the position's responsibilities and requirements were so unattainable that any person who accepted the role would have failed, which is believed to have been WMSD's goal for Ms. Baker.

42. Ms. Baker, therefore, declined the opportunity on May 3, 2022.

43. Thereafter, another employee was hired as an administrator, and he received a raise.

44. Additionally, the District hired a separate Director of Communications, but the role's responsibilities were significantly reduced.

45. The roles and responsibilities of these two (2) positions are significantly less than the "opportunity" that was offered to Ms. Baker, and one of the employees was offered a stipend of $10,000 (merely for her work operating the billboard on the high school campus) that was never offered to Ms. Baker.

**Increase In Discriminatory Tactics**

46. After Ms. Baker declined the Director of Communications position, WMSD ramped up its discriminatory efforts and retaliated against her.

47. For the school year 2022-2023, Ms. Baker was demoted to the position of "substitute" or "temporary" principal (WMSD's description) at Homeville Elementary School ("Homeville"), while she was replaced at the Middle School by a male employee at a significantly higher salary.

48. Ms. Baker questioned the rationale behind the demotion, but she did not receive a due process hearing.

49. Ms. Baker was initially informed that she would be the permanent principal at Homeville.

50. However, she was then informed she was only going to be the substitute principal for the then-current principal, who was taking a sabbatical.

51. The then-current principal was unhappy with Ms. Baker being assigned to Homeville, and he even sent her an email claiming that it was a violation the Pennsylvania School Code for her to be assigned there.

52. Ms. Baker was assigned as the substitute principal even though the District's Act 93 contract stated that the cyber-principal was to perform as a substitute principal.

53. Interestingly, on July 13, 2022, after being demoted to Homeville, an email was sent by the Superintendent that outlined a discrimination lawsuit that had been filed by an African-American family in another local school district wherein the family lost the lawsuit.

54. These types of emails are not typically sent to administrators, and Ms. Baker was the only African-American included on the email distribution.

55. The timing of this atypical email, along with Ms. Baker's questioning of WMSD's practices, appears to have been a warning against Ms. Baker to not consider any legal action.

56.     For the 2023-2024 school year, Ms. Baker was named the permanent principal at Homeville.

57.     Over the course of her tenure at Homeville, student test scores increased, attendance increased, and the community rallied behind Ms. Baker.

58.     She achieved this success even though a major health hazard was identified at Homeville in September 2023, and despite the fact that she was (at best) "underappreciated and undervalued," as stated by a school board member.

59.     Notwithstanding her successful performance at Homeville, WMSD continued its pattern of discriminatory practices.

60.     For example, Ms. Baker was admonished for actions that are considered commonplace for other administrators.

61.     For example, she was reprimanded because a school board member visited Homeville (even though she did not arrange for the visit); there were targeted comments made to sabotage her efforts during a District-wide competition, and contest rules were purposefully altered to ensure the success of other administrators (she was also embarrassed in front of her colleagues for Homeville winning the competition); another administrator was sent to a state conference to accept an award based on Ms. Baker's efforts; and, she was egregiously denied the use of available school funds that were earmarked for Homeville's students and related to community events.

62.     Nevertheless, under Ms. Baker's leadership, Homeville students made significant and measurable gains in statewide reading and math scores for the 2023-2024 school year.

63.     Her participation in the Success for PA Early Learners ("SPEL") grant was so pivotal and successful that her work was sought as a model for the program.

64. Further, a video created by Ms. Baker and her team was chosen as a training tool for other districts.

**Improper Demotion**

65. Despite her successes, Ms. Baker was removed from the SPEL program, and rather than allow her to remain at Homeville and continue her successful impact on the students and the school, WMSD again demoted Ms. Baker by moving her to the position of principal at Clara Barton for the 2024-2025 school year, being replaced at Homeville by a younger, less dark-complected female employee.

66. While knowledge of this demotion was made apparent to others much earlier, Ms. Baker was notified on July 1, 2024, that she was no longer the principal at Homeville effective the very same day.

67. When she questioned the rationale behind the demotion, she was offered neither an official response nor a hearing on the matter.

68. The demotion to Clara Barton is the latest action in a lengthy, documented list of discriminatory practices against Ms. Baker.

69. Unfortunately, consistent with the treatment of Ms. Baker, Homeville is also engaged in a pattern and practice of issuing a significant number of "needs improvement" and "failure" ratings for teachers who never previously received poor performance evaluations, and it is believed that they are all in a protected age class.

70. Further, these teachers have been subjected to write-ups, being moved within the building, and being passed over for lead positions.

**Retaliation Against Ms. Baker**

71. After Ms. Baker was demoted, she retained legal counsel, who contacted WMSD's solicitor.

72. Ms. Baker also filed the EEOC Charge.

73. Since taking these actions to protect her rights, WMSD has retaliated against Ms. Baker in numerous ways, including being excluded from school events.

74. In addition, WMSD initiated an investigation that required Ms. Baker to have her counsel present after the Homeville principal complained about a phone conversation with Ms. Baker, even though the Homeville principal hung up on Ms. Baker, and Ms. Baker reported the incident to the Superintendent and Assistant Superintendent.

75. Ms. Baker has received no information about the investigation, and despite being promised a copy of any report that was generated, she has not received anything.

76. Ms. Baker has been targeted for her audacity to stand up for her rights and against her mistreatment, and she commonly receives expressions of support from community members and other administrators about her treatment by WMSD.

77. The discrimination and retaliation caused and exacerbated the suffering that Ms. Baker has long experienced, and WMSD has and continues to discriminate against Ms. Baker on the basis of her color, gender/sex, and age.

**COUNTS**

**COUNT I: AGE DISCRIMINATION AND RETALIATION**
**ADEA and PHRA**

78. Ms. Baker incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

79. Ms. Baker is a member of a protected class (over 40).

80. Ms. Baker was entirely qualified to perform the tasks and jobs as the Homeville principal.

81. Ms. Baker suffered adverse employment action in the form of less pay and the demotion to Clara Barton.

82. But for Ms. Baker's age, WMSD would have kept Ms. Baker as the Homeville principal and would have paid her pay equal to her colleagues.

83. In support of the foregoing, one only has to consider the higher pay of Ms. Baker's colleagues, and her replacement at Homeville, who is significantly younger (and has a lighter skin complexion).

84. WMSD devised, implemented, and effectuated a pattern and practice of age discrimination in violation of ADEA, as well as Title VII and the PHRA.

85. Moreover, when an employer has willfully violated federal and state law, an employee is entitled to liquidated damages, along with compensatory damages for suffering, mental anguish, inconvenience, and loss of enjoyment of life, punitive damages sufficient to deter WMSD from engaging in future similar conduct, attorneys' fees, and pre-judgment and continuing interest.

### COUNT II: GENDER/SEX AND COLOR DISCRIMINATION AND RETALIATION
### Title VII and PHRA

86. Ms. Baker incorporates by reference the preceding paragraphs of this Complaint as if set forth at length herein.

87. Ms. Baker is in a protected group (African-American and female).

88. Ms. Baker is qualified for the principal positions she has held and for which she has applied.

89. Ms. Baker suffered adverse employment action in the form of being replaced by less dark-complected employees and being compensated less than male employees, along with mistreatment and retaliation for engaging in protected activity, including through demotion and ostracization.

90. WMSD's actions violate Title VII and the PHRA, and were/are knowing and willful.

91. Ms. Baker has suffered lost wages, loss of future earnings, and loss of benefits as a result of WMSD's unlawful actions, including its retaliation against Ms. Baker for engaging in protected activity.

92. Ms. Baker seeks lost wages, liquidated damages, lost benefits, attorneys' fees, and costs.

## PRAYER FOR RELIEF

93. WHEREFORE, Ms. Baker respectfully requests that this Court:

    a. Order WMSD to make Ms. Baker whole by paying monetary damages, interest, and other affirmative relief necessary to eradicate the effects of its deprivation of Ms. Baker's civil rights and its other unlawful actions;

    b. Order WMSD to pay compensatory damages to Ms. Baker for the injuries and suffering she has sustained, including reputational injury and emotional distress, as a result of WMSD's illegal actions;

    c. Order WMSD to pay the costs and reasonable attorneys' fees incurred by Ms. Baker; and,

    d. Award punitive damages for knowing and willful violations of the law by WMSD.

DATE: May 27, 2025								Respectfully submitted,

By */s/Brandon J. Verdream*
Brandon J. Verdream, Esquire
PA ID No. 204162
Strassburger, McKenna, Gutnick & Gefsky
444 Liberty Avenue, Suite 2200
Pittsburgh, PA 15222
412-227-0289
bverdream@smgglaw.com
*Attorneys for Plaintiff*